## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:18-cr-00100-DRL-SLC |
| | ) | |
| CHARLES R. BYERS | ) | |

### REPORT AND RECOMMENDATION

Before the Court is a motion to suppress filed by Defendant Charles R. Byers.  (ECF 16).

Byers seeks to suppress the evidence discovered by police officers during an encounter on

November 19, 2018, while Byers was sitting in his parked vehicle at the Travel Inn in Fort

Wayne, Indiana.  Byers contends that the evidence from the encounter was obtained as a result of

violations of his Fourth Amendment rights.  After considering the evidence and the parties'

arguments, I RECOMMEND that Byers's motion to suppress evidence be DENIED.

### A.  Background

On November 28, 2018, Byers was indicted on a three-count Indictment for:  in Count 1,

being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); in Count 2,

possessing with the intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1);

and in Count 3, possessing a firearm in furtherance of a drug trafficking crime, in violation of 18

U.S.C. § 924(c).  (ECF 1).  On February 22, 2019, Byers pleaded not guilty.  (ECF 12).  On

March 12, 2019, Byers filed the present motion, together with a memorandum in support.  (ECF

16, 17).  This matter was referred to the undersigned Magistrate Judge for the issuance of a

report and recommendation pursuant to 28 U.S.C. § 636(b)(1).  (ECF 20).

An evidentiary hearing on this matter was held on May 14, 2019.[1]  (ECF 28).  On July 12, 2019, Byers filed a post-hearing brief in support of his motion to suppress.  (ECF 31).  The Government filed its response on August 19, 2019, and Byers filed his reply brief on September 3, 2019.  (ECF 32, 33).  Therefore, the matter is ripe for ruling.

**B.  Findings of Fact**

At the evidentiary hearing, the Government offered the testimony of Officer Rae Jackson and Officer Ryan Nystuen, both of the Fort Wayne Police Department ("FWPD").  (Tr. 6-85, 103-04).  Officer Jackson had five years experience as a road officer, which included training in drug investigations.  (Tr. 7-11).  Officer Nystuen had six years of experience in law enforcement, which included training in drug investigations.  (Tr. 65-68).  Byers testified on his own behalf at the hearing.  (Tr. 85-103).

On the evening of November 19, 2018, at about 6:45 p.m., Officer Jackson was driving alone in her fully-marked squad car through the parking lot of the Travel Inn located in the area of Coliseum Boulevard and Interstate 69 in Fort Wayne, Indiana.  (Tr. 11-13; Exs. 1-3A).  It was already dark outside.  (Tr. 13).  About a week earlier, the owner of the Travel Inn, Jhanvi Patel, who also owned several other motels in the area, had requested FWPD officers to patrol the parking lots of her motels due to recent criminal incidents, including people breaking windows and people passed out in vehicles after using drugs.  (Tr. 13, 19, 70).  Officer Jackson considered it a "high-crime area" and "pretty rough," known for drugs, prostitution, thefts, vehicle thefts, strip clubs, and truck stops.  (Tr. 14-15, 61; *see also* Tr. 70).

---

[1] The transcript of the evidentiary hearing (ECF 30) will be referred to herein as "Tr. __," and the exhibits from the hearing will be referred to as "Ex. __."

When driving through the parking lot, Officer Jackson observed a blue Chevrolet S-10 pickup truck parked in the back on the east side. (Tr. 15-16; *see* Exs. 1-4). This section of the parking lot had no lighting, so it was very dark and secluded. (Tr. 13, 72, 94). The driver of the truck had backed into a parking space, which Officer Jackson knew, based on her experience, was a common tactic used by car thieves to hide the license plate of a stolen vehicle. (Tr. 16, 22, 72, 94). The truck was occupied by two individuals, and the engine was running. (Tr. 15-16, 22, 86, 94). Even though it was very cold outside, the driver had his window partially down. (Tr. 16, 94). Officer Jackson later learned that Byers was in the driver's side of the vehicle, and Willis Cook was in the passenger side. (Tr. 27).

Officer Jackson parked her squad car to the side of the vehicle and across the parking spaces, approximately four to six spaces away from the vehicle, and approached the vehicle on foot. (Tr. 22, 86; Ex. 4). Her squad car's headlights were on at the time, but she did not activate any emergency lights or spotlights. (Tr. 22, 86). Officer Jackson walked up to the vehicle and greeted the two men by saying, "How's it going?" or "How you doing?" (Tr. 22-23, 86). Her tone was polite and friendly, just loud enough to be heard; she did not yell or issue a command. (Tr. 23-24). Nor did she draw her gun or taser, or make a display of force. (Tr. 23). As Officer Jackson was approaching the vehicle, Byers, who was seated in the driver's seat, responded that they were doing alright or "fine." (Tr. 23-24, 86-87).

The parties dispute the sequence of what happened next. According to Officer Jackson, before she reached the vehicle, Byers opened the driver's door and exited the vehicle without her

ever asking him to do so.[2]  (Tr. 24, 27-28, 104).  As Byers did so, Officer Jackson, who was standing off to the right side of the driver's door, observed a methamphetamine pipe in plain view near the door sill—that is, sitting between the driver's seat and the driver's door frame. (Tr. 24, 75; Exs. 5-6).  Based on her training and experience, Officer Jackson recognized the bulbous glass pipe as a methamphetamine pipe based on its shape, the white drug residue, and the black burnt spots.  (Tr. 24, 27-30, 62, 75; Exs. 5-6).  Recognizing that she had probable cause to arrest Byers for possession of paraphernalia, a misdemeanor in Indiana, Officer Jackson told Byers to turn around and place his hands on top of his head.  (Tr. 28).  Byers complied, and Officer Jackson (with Officer Nystuen's assistance, as explained *infra*) placed Byers in handcuffs.  (Tr. 28, 33-34, 72).  Officer Jackson testified that approximately five minutes elapsed from her greeting Byers and his being placed in handcuffs.  (Tr. 49).

Byers testified, however, that as Officer Jackson approached the vehicle, she immediately "asked [him] to step out of the vehicle, face the vehicle, [and] put [his] hands on [his] head." (Tr. 86; *see* Tr. 89, 102).  Byers testified that he immediately felt he was not free to leave.  (Tr. 87, 89).  Byers claims that he complied with Officer Jackson's order and "as [he was] being handcuffed," Officer Jackson said, "Uh-oh."  (Tr. 86-87).  At that point, Byers turned and saw Officer Jackson looking at the floorboard of his vehicle, and there was "paraphernalia laying on [his] floorboard."  (Tr. 87).  Thus, according to Byers, Officer Jackson asked him to step out of the vehicle, face the vehicle, and put his hands on top of his head before she ever saw the methamphetamine pipe.  (Tr. 87, 102-03).  Byers testified that less than two minutes elapsed

---

[2] The driver's door of Byers's vehicle had a makeshift lock—the type that slides open back and forth across a door in a home—that opened on the outside of the vehicle.  (Tr. 24).

4

between his responding to Officer Jackson's greeting and his being placed in handcuffs.  (Tr. 87).    After Byers was handcuffed, Officer Jackson performed a pat-down search of Byers incident to arrest.  (Tr. 31, 33, 53).  Officer Jackson felt a cylindrical object in Byers's pocket, which Byers stated was "probably a crack pipe."  (Tr. 31-33, 74; Ex. 13).  Byers had no weapons on his person.  (Tr. 54).  Byers also stated that he "probably" had warrants, and within about ten minutes, Officer Jackson confirmed that Byers had an outstanding arrest warrant for a probation violation on a theft case.  (Tr. 33-35).

Officer Jackson radioed for assistance, and at some point between Byers stepping out of the vehicle and being handcuffed, Officer Nystuen arrived at the scene in a marked police car.  (Tr. 31, 69-71).  He, too, did not activate his emergency lights or spotlight.  (Tr. 71).  Officer Nystuen parked closer to Byers's vehicle, but did not block it.  (Ex. 4).  When Officer Nystuen arrived, Byers had his hands on top of his head, the driver's door of the vehicle was open, and Byers was not yet handcuffed; Officer Nystuen saw the methamphetamine pipe sitting between the driver's seat and the driver's door frame.  (Tr. 71-72, 75, 79).  Officer Jackson alerted Officer Nystuen that she believed Byers had a pipe in his pants pocket and asked Officer Nystuen to reach in for it.  (Tr. 73).  Officer Nystuen retrieved the crack pipe from Byers's pants pocket.  (Tr. 33, 73-74).  After Byers was searched and arrested, Officer Nystuen put Byers in the cage portion of Officer Jackson's squad car, at which point Officer Jackson activated her in-car video.  (Tr. 25, 34; Ex. 4).

The Officers then walked back to the truck and talked with Cook, Byers's passenger.  (Tr. 27, 34, 73).  Cook told the Officers that Byers had picked him up to wire some stereo speakers.  (Tr. 34, 75; *see also* Tr. 94).  Officer Nystuen searched Cook and found "nothing of

interest." (Tr. 73). After the Officers finished conversing with Cook, Cook left the scene, as he had nothing in the vehicle. (Tr. 52, 75).

Pursuant to FWPD Motor Vehicle Tow and Inventory Policy PD04-0130 (the "Tow Policy"), the Officers decided to tow and inventory the truck (which was registered to Chandraa Coe)[3] because the vehicle could not be locked and secured due to the makeshift external lock, the driver was arrested, and the vehicle was on the motel's private property.[4] (Tr. 35, 39-40, 46-47, 95; *see* Ex. 12). During the search of the vehicle, the Officers located a loaded .40 Smith & Wesson semi-automatic pistol, two scales, baggies, and a closed opaque oval container with a combination lock on it. (Tr. 38-45, 48, 54-55, 76-78, 88; Exs. 7-11).

Officer Jackson was unsure how to open the oval container and did not attempt to do so because of the combination lock. (Tr. 55; Ex. 7). The Tow Policy does not require that a locked container be opened. (Tr. 59; Ex. 12 § III.B.5). However, a closed container should be opened if it is unlocked or if a key or combination to a locked container is available. (Tr. 42; Ex. 12 § III.B.5). Officer Nystuen asked Byers for the combination to the container, but Byers refused. (Tr. 77, 88). Officer Nystuen testified that after he asked Byers for the combination and Byers refused, Officer Nystuen was able to open the container by merely pushing a button, finding that the container was already unlocked. (Tr. 77). Byers, however, testified that the container was locked, and that it could only have been opened by prying it with force. (Tr. 101-02). Inside the container, the Officers found methamphetamine, heroin, marijuana, and cocaine. (Tr. 40-43, 54, 77, 88-89; Exs. 7-8).

---

[3] While the vehicle was registered to Ms. Coe, the Court will refer to it as Byers's vehicle for ease in this Report and Recommendation.

[4] Byers testified that his driver's license was suspended and that Ms. Coe was incarcerated. (Tr. 96).

After being read his Miranda rights, Byers admitted possession of methamphetamine and crack in the truck, but denied knowledge of the gun.  (Tr. 37-39, 90).  Officer Jackson transported Byers to the police operations center because Byers requested to speak with narcotics detectives.  (Tr. 48, 92).

Byers testified at the hearing that he had been using cocaine, methamphetamine, marijuana, and heroin in the days leading up to his encounter with the Officers.  (Tr. 91-92). Byers stated that he had used drugs two to three hours prior to the encounter, and thus, was "probably still under the influence" at the time of the encounter.  (Tr. 91-92).  Byers also testified that he had at least four prior convictions for theft.  (Tr. 97-100).  Additionally, Byers admitted that he lied to the Officers when he denied knowledge of the gun because he did not want to take responsibility for the gun.  (Tr. 90-91).

### C.  Credibility Findings

Byers meaningfully contested the testimony of the Government's witnesses in just two respects:  (1) whether Officer Jackson asked him to step out of the vehicle, face the vehicle, and place his hands behind his head *after* she ever saw the methamphetamine pipe in the door sill of the vehicle; and (2) whether the closed oval case with the combination lock was unlocked. Byers did not otherwise meaningfully contest the testimony of the Government's witnesses, and I FIND the testimony of the Government's witnesses to be credible.

As to these disputes of fact, Byers first claims that Officer Jackson asked him to step out of the vehicle, face the vehicle, and place his hands behind his head before she ever saw the methamphetamine pipe in the door sill of the vehicle.  (Tr. 87, 102-03).  But Byers inconsistently claimed that Officer Jackson *also* handcuffed him before she ever saw the methamphetamine

pipe in the door sill. (*Compare* Tr. 86-87, *with* Tr. 102-03). This inconsistency, coupled with Byers's testimony that he was "probably still under the influence" of drugs during the encounter (Tr. 92), his prior theft convictions, and his lie to the Officers about not having knowledge of the gun, make Byers a less credible witness on this point. In contrast, Officer Jackson consistently testified that Byers stepped out of the vehicle without her ever asking him to and that she observed the methamphetamine pipe when he did so. (Tr. 23-24, 28-29, 104). Moreover, Officer Nystuen's testimony is consistent with Officer Jackson's on this point. Officer Nystuen testified that when he arrived on the scene, Byers had his hands on top of his head, the truck's driver's door was open, Byers was not yet handcuffed, and the methamphetamine pipe was visible in the door sill of the vehicle. (Tr. 71-72, 75, 79). Consequently, I FIND Officer Jackson's testimony that Byers stepped out of the vehicle without being asked to do so more credible than Byers's conflicting testimony on this point.

As to the second disputed factual issue, Byers testified that the closed oval container with the combination lock, which was discovered during the Officers' search of the vehicle, was locked and that it could only have been opened by prying it with force. (Tr. 101-02). In contrast, Officer Nystuen testified that he opened the container by merely pushing a button, and thus, that the container was actually unlocked. (Tr. 77). Byers does not submit any evidence to support his speculation that the Officers pried the container open with force, and Exhibits 7 and 8 do not reflect any indication that force was used. This lack of evidence, coupled with Byers's testimony that he was "probably still under the influence" of drugs during the encounter (Tr. 92), his prior theft convictions, and his lie to the Officers about not having knowledge of the gun, make Byers a less credible witness on this issue. Consequently, I FIND Officer Nystuen's

testimony that the oval container was unlocked more credible than Byers's testimony that the container was locked.

### D.  Applicable Law

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. Const. amend. IV.  There are "three categories for police-citizen encounters in relation to the Fourth Amendment," *United States v. Johnson*, 910 F.2d 1506, 1508 (7th Cir. 1990), but "[n]ot all police/citizen encounters implicate [F]ourth [A]mendment concerns," *United States v. Edwards*, 898 F.2d 1273, 1276 (7th Cir. 1990) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).  The three categories are:  (1) an arrest, which "requires that police have probable cause to believe a person has committed or is committing a crime"; (2) an investigatory or *Terry* stop, "which is limited to a brief, non-intrusive detention" and requires that police "have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime"; and (3) a consensual encounter, which "involves no restraint on the citizen's liberty, and is characterized by an officer seeking the citizen's voluntary cooperation through non-coercive questioning."  *Johnson*, 910 F.2d at 1508 (citations omitted).  An arrest is a seizure under the Fourth Amendment; an investigatory stop is a more limited seizure under the Fourth Amendment; and a consensual encounter is not a seizure at all under the Fourth Amendment.  *Id.; see also United States v. Rice*, 995 F.2d 719, 723 (7th Cir. 1993).  In a consensual encounter, "the degree of suspicion that is required is zero."  *Johnson*, 910 F.2d at 1508-09 (citations omitted).

It is clear that "not every police encounter implicates the Fourth Amendment.  A seizure

within the meaning of the Fourth Amendment takes place if, in view of all the circumstances

surrounding the incident, a reasonable person would not believe that he was free to leave."

*United States v. Shields*, 789 F.3d 733, 743 (7th Cir. 2015) (citing *Florida v. Bostick*, 501 U.S.

429, 439 (1991)).  To determine whether a reasonable person would believe he was free to leave,

and thus whether an encounter with police is consensual or is a seizure, courts consider the

following factors:

> (1) whether the encounter occurred in a public place; (2) whether
> the suspect consented to speak with the officers; (3) whether the
> officers informed the individual that he was not under arrest and
> was free to leave; (4) whether the individuals were moved to
> another area; (5) whether there was a threatening presence of
> several officers and a display of weapons or physical force; (6)
> whether the officers deprived the defendant of documents [he]
> needed to continue on [his] way; and (7) whether the officers' tone
> of voice was such that their requests would likely be obeyed.

*Id.* (quoting *United States v. Johnson*, 680 F.3d 996, 975 n.4 (7th Cir. 2012)).

"[M]ere police questioning does not constitute a seizure" under the Fourth Amendment;

"police may approach persons and ask questions or seek their permission to search, provided that

the officers do not imply that answers or consent or obligatory."  *United States v. Childs*, 277

F.3d 947, 950 (7th Cir. 2002) (citations omitted).  The Seventh Circuit Court of Appeals has

explicitly found that an encounter that would otherwise be consensual is not a seizure just

because the individual is seated in an automobile at the time of the encounter.  *Shields*, 789 F.3d

at 744 ("These principles do not change when an individual is seated in an automobile."); *United*

*States v. Douglass*, 467 F.3d 621, 624 (7th Cir. 2006) (holding that the officers' presence on

each side of the defendant's car, where the officers were standing with flashlights, did not

"convert the encounter into a seizure because [the defendant] still could have declined to answer

their questions and driven away").

An encounter that is initially consensual "can develop into an investigatory stop depending upon the conduct of the investigating officers." *United States v. Scheets*, 188 F.3d 829, 837 (7th Cir. 1999) (citing *United States v. Odum*, 72 F.3d 1279, 1283 (7th Cir. 1995)). Police conduct that can convert a consensual encounter into an investigatory stop is behavior that would cause a reasonable person in the situation to no longer believe that he was free to leave. *See United States v. Hendricks*, 319 F.3d 993, 1000-01 (7th Cir. 2003) (finding that the initial consensual encounter had developed into an investigatory stop when police cars blocked in the defendant's vehicle on three sides).

### E.  Conclusions of Law

1.  <u>The Contact Began as a Consensual Encounter</u>

Byers argues that an investigatory stop began immediately upon Officer Jackson's approaching his vehicle.  (ECF 31 at 6).  He contends that Officer Jackson's parking her squad car "about five spaces back in front of Byers'[s] [vehicle]" supports a conclusion that a seizure occurred.  (*Id.*).  Byers asserts that he felt he should follow Officer Jackson's commands because she was a police officer, and that at no time during the encounter did he feel as though he was free to leave.  (*Id.*).  Byers's characterization of his initial encounter with Officer Jackson, however, is not supported by the factual record.

It is true that under certain circumstances police may effect an investigatory stop by blocking the egress of a suspect's vehicle.  *See United States v. Lechuga*, 925 F.2d 1035, 1040-41 (7th Cir. 1991) (finding an investigatory stop where the officers drew a gun and "sandwich[ed]" the suspect's vehicle when tailing him, after he had been identified by an

11

informant); *United States v. Packer*, 15 F.3d 654, 655 (7th Cir. 1994) (finding an investigatory

stop where three officers were involved and one police cruiser pulled directly in front of the

suspect's vehicle and another cruiser pulled directly behind the suspect's vehicle, with the first

cruiser shining white "take down lights" to illuminate the stopped vehicle); *United States v.*

*Jackson*, 918 F.2d 236, 238 (7th Cir. 1990) (finding an investigatory stop where two police

cruisers blocked a suspect's vehicle and approached it with their guns drawn).

But here, Officer Jackson parked to the side of Byers's vehicle and approximately five

spaces away, not directly in front of it as Byers asserts.  (Tr. 22; Ex. 4).  As such, Byers's egress

was not blocked by Officer Jackson's squad car, undercutting Byers's assertion that he was

seized immediately upon Officer Jackson's approach to his vehicle.  *See Douglass*, 467 F.3d at

624 (finding that "the officers' stance on either side of [the suspect's] car [did not] convert the

encounter into a seizure because he still could have declined to answer their questions and driven

away"); *Hendricks*, 319 F.3d at 1001-02 (finding that the officer's parking his police cruiser

fifteen feet behind a suspect was a consensual encounter at that point, especially where the

suspect was not signaled to pull over and the suspect's path was not blocked).

Rather, when considering the relevant factors to determining whether a police-citizen

encounter is consensual or a seizure, *Shields*, 789 F.3d at 743, it is clear that the encounter

between Byers and Officer Jackson was consensual at the outset.  The encounter occurred in an

area accessible by the public.  *See, e.g.*, *United States v. De La Rosa*, 922 F.2d 675, 678 (11th

Cir. 1991) (finding a parking lot of an apartment complex to be a public area and the police-

citizen encounter there to be consensual); *United States v. Dinwiddie*, No. S1-1:06 CR 134 CDP

DDN, 2008 WL 4922000, at *15 (E.D. Mo. Jan. 29, 2008) (finding that the contact began as a

12

consensual encounter where police approached the defendant in a parking lot of an apartment complex), *R. & R. adopted by United States v. James*, No. 1:06CR134 CDP, 2008 WL 1925032 (E.D. Mo. Apr. 29, 2008); *United States v. Gutierrez-Vargas*, No. CR 03-577-BR, 2005 WL 696902, at *7 (D. Or. Mar. 25, 2005) (finding that the contact began as a consensual encounter where police approached the defendant at a closed convenience store in an area of the parking lot that was open to the public).

Officer Jackson was alone, did not use her emergency lights or spotlights, approached the vehicle on foot, and did not draw a weapon. *See United States v. Clements*, 522 F.3d 790, 794-95 (7th Cir. 2008) ("Other than illuminating their flashing lights for identification and safety purposes, the officers did nothing that could have made Clements feel that his freedom was restrained:  they did not draw their weapons, they did not surround Clements's car with multiple squad cars or otherwise prevent him from driving away, they did not lay a hand on Clements, and they did not use forceful language or tone of voice . . . .").  Officer Jackson used a pleasant tone and posed just one brief question in greeting, merely inquiring how the occupants were doing.  *See id.; United States v. Nobles*, 69 F.3d 172, 181 (7th Cir. 1995) (finding a consensual encounter where the entire exchange took place in a normal, friendly-type conversational tone and lasted but a short time).  Officer Jackson did not reach for the driver's door or ask the occupants to exit the vehicle.  *See Hendricks*, 319 F.3d at 1001 (finding a consensual encounter where the defendant had stopped and exited his vehicle on his own free will, the officer parked fifteen feet behind the defendant and not blocking the defendant's path of egress, and the officer did not activate his emergency lights or shine a light in the vehicle).

While Byers contends in his brief that "at no time during his interactions with [Officer]

13

Jackson did he feel as though he would be free to leave" (ECF 31 at 6 (citing Tr. 87, 89)), that assertion is based on Byers's testimony that he "[i]mmediately . . . was told to face the truck and place [his] hands behind [his] head."  (Tr. 89).  But the Court found Byers's testimony in that regard to lack credibility and instead credited Officer Jackson's version of events.  Officer Jackson testified that after Byers responded to her greeting, Byers opened the driver's door on his own accord and stepped out of the truck without ever being asked to do so.  (Tr. 23-24, 104).  When Byers opened the driver's door and stepped out of the truck, Officer Jackson saw the methamphetamine pipe in the door sill in plain view, and it was then when Officer Jackson instructed Byers to turn and face the vehicle and place his hands on top of his head.  (Tr. 24, 27-28, 75).  Thus, up until the point when Officer Jackson saw the methamphetamine pipe in the door sill, the encounter was consensual and Byers was free to leave.

    2.  <u>The Encounter Converted into an Arrest When Officer Jackson Observed the Methamphetamine Pipe in the Door Sill</u>

Once Officer Jackson saw the methamphetamine pipe in the door sill as Byers stepped out of the vehicle, Officer Jackson had probable cause to believe that Byers was in possession of paraphernalia in violation of Indiana Code § 35-48-4-8.3, which is a misdemeanor in Indiana. (Tr. 24, 28).  At that point, Officer Jackson instructed Byers to turn and face the vehicle and place his hands on top of his head, and the consensual encounter between Byers and Officer Jackson converted into an arrest.  (Tr. 24, 28, 50).  Officer Nystuen arrived on the scene when Byers had his hands on his head, and Officer Nystuen then assisted Officer Jackson to handcuff Byers.  (Tr. 28, 31, 50, 71-72).  The parties do not dispute that Byers was no longer free to leave once Officer Jackson observed the methamphetamine pipe and instructed Byers to turn around to face the vehicle and place his hands on his head.

3. <u>The Frisk and Search of Byers's Person Was Incident to His Lawful Arrest</u>

Byers argues that even if Officer Jackson had reasonable suspicion to conduct an investigatory stop—though the Court has already concluded the initial contact was a consensual encounter, not an investigatory stop—the frisk and search of his person exceeded the scope of the stop, in violation of the Fourth Amendment. (ECF 31 at 9). Byers acknowledges that police may order an individual out of his vehicle during a traffic stop and frisk him for weapons if there is a reasonable belief that the individual is armed and dangerous, *see Pennsylvania v. Mims*, 434 U.S. 106, 111-12 (1977), but Byers contends there were no circumstances here to give rise to any suspicion that he was armed and dangerous. (*See, e.g.*, Tr. 53). Thus, as Byers sees it, the frisk and subsequent search of his person were unwarranted.

However, given that Officer Jackson had probable cause to arrest Byers for possession of the methamphetamine pipe, whether Officer Jackson could have objectively viewed Byers as armed and dangerous is immaterial. *See United States v. Jackson*, 377 F.3d 715, 716 (7th Cir. 2004) ("[P]olice who make an arrest on probable cause do not need person-specific suspicion that the suspect is carrying something dangerous." (emphasis and citation omitted)); *United States v. Rankins*, No. 13 CR 331, 2014 WL 1924017, at *5 (N.D. Ill. May 14, 2014) ("Whether the agents objectively could have believed that Defendant was armed and dangerous is an interesting question on the record before the Court. However, it is hard to see why that matters, given the probable cause for his arrest." (brackets, citation, and quotation marks omitted)). Officer Jackson patted Byers down only after she had probable cause to arrest Byers for

15

possession of paraphernalia and had placed him in handcuffs.[5]  (Tr. 28, 31); *see United States v. Wilson*, 2 F.3d 226, 231 (7th Cir. 1993) ("There can be little question that a suspect placed in handcuffs is not free to leave and, for all practical persons, is in police custody . . . .").

As such, the frisk completed by Officer Jackson and the subsequent search of Byers's person by Officer Nystuen were performed incident to Byers's arrest, and thus, did not violate Byers's Fourth Amendment rights.  *See Riley v. California*, 573 U.S. 373, 382 (2014) (explaining that it is well settled that a search without a warrant may be made of the person of the arrestee incident to a lawful arrest); *United States v. Robinson*, 414 U.S. 218, 224 (1973) (same).  Consequently, the crack pipe discovered in Byers's pocket during the frisk and subsequent search of his person should not be suppressed.

   4.  Several Exceptions Permitted the Warrantless Search of Byers's Vehicle

Byers also argues that the warrantless search of his vehicle was without justification and that evidence obtained as a result of that search should be suppressed.  (ECF 31 at 10).  The Government responds that at least three exceptions to the warrant requirement apply as to the search of Byers's vehicle.  (ECF 32 at 15, 18, 19).

   *a.  The Automobile Exception*

The first relevant exception is the automobile exception.  This exception "is justified by a vehicle's 'ready mobility' which makes 'immediate intrusion' necessary to prevent the destruction of evidence."  *United States v. Zahursky*, 580 F.3d 515, 522 (7th Cir. 2009) (citing

---

[5] In any event, about ten minutes after she frisked Byers, Officer Jackson learned that Byers had a pre-existing arrest warrant for a probation violation on a theft case.  (Tr. 33-35).  Byers's arrest on the probation violation would have independently triggered a search of his person incident to that arrest.  *See Utah v. Strieff*, 136 S. Ct. 2056, 2062-63 (2016).  Consequently, the crack pipe in Byers's pocket would have been lawfully discovered in a search incident to his arrest on the outstanding warrant, which provides an additional basis to deny Byers's motion to suppress the crack pipe.

*United States v. Washburn*, 383 F.3d 638, 641 (7th Cir. 2004)).  This exception is also supported

by "the individual's lesser expectation of privacy in a vehicle."  *Id.* (citation omitted).

 Under the automobile exception, "if there is probable cause to believe that a vehicle

contains evidence of criminal activity, police may search any area in which the evidence might

be found."  *United States v. Nicksion*, 628 F.3d 368, 377 (7th Cir. 2010) (citation omitted).

Officers are permitted to search "for evidence relevant to offenses other than the offense of

arrest, and the scope of the search authorized is broader."  *Id.* (citation omitted).  However,

"[t]he scope of the search [cannot be] greater than a magistrate could have authorized by issuing

a warrant based on the probable cause that justified the search."  *United States v. Ross*, 456 U.S.

798, 818 (1982); *see also United States v. Charles*, 801 F.3d 855, 860 (7th Cir. 2015).

"Authorities have probable cause if, based on the totality of circumstances, there exists a fair

probability of finding the items."  *United States v. Calvo-Saucedo*, 409 F. App'x 21, 25 (7th Cir.

2011) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Zahursky*, 580 F.3d at 521).

 Here, Officer Jackson saw a methamphetamine pipe in plain view in the door sill of

Byers's vehicle, and Officer Nystuen retrieved a crack pipe from Byers's pocket, both of which

were clear indicators that additional evidence of drug possession or other drug activity might be

found in the vehicle.  *See United States v. Jones*, No. 1:11-cr-00164-TWP-DML, 2012 WL

4514074, at *3 (S.D. Ind. Oct. 2, 2012) ("Officer Klonne's plain view observation of the crack

pipe in the driver's seat of the vehicle was a clear indication that additional evidence of drug

possession or other drug activity might be found in the car.").  Even though Byers had been

placed in custody and no longer had access to the vehicle at the time of the search, the vehicle

was still inherently mobile and Byers had a lesser expectation of privacy in it.  *See Zahursky*,

580 F.3d at 523 (finding that the defendant's lack of access to his car did not matter, as the car was still inherently mobile and thus the automobile exception applied).  Consequently, the automobile exception applies in this instance, and the evidence obtained during the search of Byers's vehicle should not be suppressed.

### b.  An Inventory Search

A second exception to the warrant requirement is an inventory search.  "Inventory searches are a well-recognized exception to the Fourth Amendment's warrant requirements." *United States v. Wilson*, 938 F.2d 785, 788 (7th Cir. 1991) (collecting cases).  "[I]nventory searches 'serve to protect an owner's property while it is in the custody of the police, to insure against claims of loss, stolen, or vandalized property, and to guard the police from danger.'"  *Id.* (quoting *Colorado v. Bertine*, 479 U.S. 367, 372 (1987)); *see United States v. Martin*, 360 F. App'x 686, 689 (7th Cir. 2010) ("[T]he inventory-search exception[] states that a warrantless search of a vehicle before impound is lawful if conducted in conformity with standard police procedures aimed at protecting the owner's property." (citations omitted)).  "An inventory search is lawful if (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures."  *United States v. Cartwright*, 630 F.3d 610, 614 (7th Cir. 2010) (citation omitted).

The FWPD's Tow Policy provides that an officer must impound and tow a vehicle if the driver was arrested or if the vehicle itself was imperiled.  (Ex. 12 § III.A).  The Tow Policy further provides that if a vehicle is to be impounded, then an officer must inventory all contents of the vehicle at the location of the vehicle's seizure, including all containers in all parts of the

vehicle.  (Ex. 12 § III.B).  Here, Byers was arrested, and the vehicle could not be fully secured

due to the makeshift lock on the outside of the driver's door.  (Tr. 39).  Therefore, the Officers

inventoried the contents of the vehicle in accordance with the Tow Policy, except for the locked

truck bed because the Tow Policy does not require the opening of a locked container.  (Tr. 59;

Ex. 12 § III.B.5); *Jones*, 2012 WL 4514074, at *3 (S.D. Ind. Oct. 2, 2012) ("An inventory search

of a vehicle is lawful so long as the possessor of that vehicle is the subject of a lawful arrest and

the search is conducted in accordance with existing inventory procedures." (citing *Cartwright*,

630 F.3d at 614)).  As explained earlier, the Officers' inventory of the vehicle included the

contents of the unlocked oval container, as the Tow Policy requires the search of unlocked

containers.  Thus, the inventory exception also applies here, providing an additional reason to

deny Byers's motion to suppress the evidence obtained during the search of his vehicle.

### c.  Search Incident to Arrest

The Government also cites a third exception to the warrant requirement—the search of a

vehicle incident to a lawful arrest.  *See Arizona v. Gant*, 556 U.S. 332, 346 (2009); *United States

v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014).  Searches predicated on a search incident to

arrest and those predicated on the automobile exception "are interrelated, but not identical."

*United States v. Paige*, 870 F.3d 693, 702 (7th Cir. 2017) (quoting *Edwards*, 769 F.3d at 514).

Under the search incident to arrest exception, "[p]olice may search a vehicle incident to a recent

occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at

the time of the search or it is reasonable to believe the vehicle contains evidence *of the offense of

arrest*."  *Gant*, 556 U.S. at 351 (emphasis added); *see also Cartwright*, 630 F.3d at 613.

The first prong of the search incident to arrest exception is inapplicable because Byers

was already handcuffed and sitting in the squad car when the Officers searched his vehicle. *See Paige*, 870 F.3d at 702 ("[T]he first prong is inapplicable because Mr. Paige was not in the vehicle."). But the second prong of the search incident to arrest exception is applicable.

The Officers had probable cause to arrest Byers for possession of paraphernalia, and it was reasonable to believe a search of the vehicle could have yielded further evidence of drug crimes. *See United States v. Dockery*, 547 F. App'x 339, 341 (4th Cir. 2013) ("[I]t was reasonable to believe that evidence of drug possession and/or trafficking would be found in the vehicle, based on the information known to Officer Malone and the fact that the passenger was found with a crack pipe and swallowed a quantity of crack cocaine."); *United States v. Gray*, 544 F. App'x 870, 884 (11th Cir. 2013) ("[S]ince an MGPD detective had probable cause to arrest Jefferson for possession of cocaine, the search of the vehicle was also permissible because it reasonably could have yielded further evidence of drug crimes."); *United States v. Bradford*, No. 09-CR-71, 2009 WL 3754174, at *9 (E.D. Wis. Nov. 5, 2009) (opining that where the defendant was arrested for possession of paraphernalia—a crack pipe found in his pocket—it was reasonable to believe that a search of the vehicle would yield evidence relating to the possession of a crack pipe). Therefore, the search incident to a lawful arrest exception is also applicable here, providing yet another basis upon which to deny Byers's motion to suppress the evidence obtained during the search of his vehicle.

### F. Conclusion

For the above reasons, I CONCLUDE that Byers's Fourth Amendment rights were not violated in the encounter with the Officers on November 19, 2018. The encounter was consensual at the outset, but converted into an arrest upon probable cause; the frisk and search of

Byers's person was with probable cause and incident to a lawful arrest; and at least three exceptions to the warrant requirement apply as to the warrantless search of Byers's vehicle. I therefore RECOMMEND that Byers's motion to suppress (ECF 16) be DENIED.

The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties. NOTICE IS HEREBY GIVEN that within 14 days after being served with a copy of this recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations. Fed. R. Crim. P. 59(b)(2). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.

Dated this 3rd day of October 2019.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge